UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

R.E.P. (XXX-XX-9107)                   CIVIL ACTION NO. 11-cv-1266

VERSUS                                  JUDGE FOOTE

U.S. COMMISSIONER, SOCIAL           MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

R.E.P. ("Plaintiff") was born in 1954, has more than a 12th-grade education, and has past work experience as a computer mechanic and repairer. He applied for disability benefits based on limitations related to hepatitis C and spine problems. ALJ Toni White-Bogan held an evidentiary hearing and issued a written decision that denied the claim. The Appeals Council denied a request for review, and Plaintiff filed this civil action to seek judicial review of the Commissioner's final decision. For the reasons that follow, it is recommended that the Commissioner's decision be reversed and that the case be remanded to the Commissioner for further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment

prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found that Plaintiff did not work (step one) between his alleged onset date of March 22, 2005 and the date he was last insured for disability benefits purposes, March 31, 2009. She found at step two that Plaintiff suffered from hepatitis C and cervical spondylosis, impairments that are severe but not so severe alone or in combination that they met or medically equaled a listed impairment (step three) that would require a finding of disabled without regard to Plaintiff's age, education, or work experience.

The ALJ next reviewed the medical evidence and testimony to assess Plaintiff's residual functional capacity ("RFC"). She found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), reduced by the ability to stand/walk up to six hours and sit up to six hours in an eight-hour workday. The ALJ heard testimony from a vocational expert ("VE"), and she found that the VE's testimony proved that Plaintiff was capable of performing his past relevant work (step four).

The step four finding, alone, would result in denial of the claim, but the ALJ went on to make "alternative findings for step five of the sequential evaluation process." She found, based again on the testimony of the VE, that Plaintiff could perform the demands of other

jobs that exist in significant numbers in the national economy. The two representative jobs identified were cashier II and ticket seller.

**Issues on Appeal**

Plaintiff raises two issues on appeal: (1) the ALJ did not properly determine at step four that Plaintiff can return to his past relevant work and (2) the ALJ did not consider all of Plaintiff's functional limitations in determining his RFC.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

### A. Return to Past Work

The VE testified that the Dictionary of Occupational Titles ("DOT") indicated that Plaintiff's past work as computer mechanic and repairer was at the medium exertional level. She testified that a person with an RFC to perform no greater than light work could not perform the demands of that job. Tr. 51. The ALJ, in her opinion, stated that the VE

testified that Plaintiff had past relevant work as a computer electronics mechanic, which is a different position than identified by the VE at the hearing. The ALJ went on to find that the VE testified a person with Plaintiff's RFC and other vocational factors would be able to perform the demands of that past work. Tr. 23.

Plaintiff argues that the ALJ's recollection appears to have been flawed regarding the VE's testimony. The Commissioner, in his brief, "acknowledges that the ALJ incorrectly believed that the VE testified that Plaintiff could perform past work as a computer electronics mechanic." The Commissioner thus concedes Plaintiff's step four argument.

### B. Other Jobs

The Commissioner maintains that his decision must be affirmed, despite the mistake at step four, because it is supported by the alternative step-five finding. Plaintiff argues in his reply memorandum that the ALJ never made an actual finding that Plaintiff could perform alternative work. He states that the ALJ may have discussed other possible jobs, in dicta, but his only finding of disability was based on step four. The court does not read the decision in that manner. The ALJ found that Plaintiff could perform his past relevant work, then proceeded to make "alternative findings for step five," and set them out in even more detail than the step four discussion. The ALJ concluded that, "[i]n the alternative," there were other jobs that Plaintiff could have performed. The ALJ also stated that she "conclude[d]" that Plaintiff was capable of making a successful adjustment to other work. Tr. 23-24. There was, therefore, an alternative finding that the decision may rest on if it is supported by substantial evidence.

The VE identified two jobs, cashier II and ticket seller, at the light level. The ALJ asked the VE to assume the claimant would be limited to light work and would be limited on his left side and could only occasionally reach. The VE responded that the two jobs would be eliminated under that scenario because they both require frequent and constant reaching. Tr. 53-54. It is common for the ALJ, and claimant's counsel, to ask about the effect of various limitations that the ALJ may or may not include in her final findings. Plaintiff argues that the step-five finding must be reversed because (1) the ALJ did not include a limitation for reaching, despite evidence of one, and (2) the identified jobs would be eliminated by that limitation.

The period at issue is from the alleged onset date in March 2005 until Plaintiff's insured status ended on March 31, 2009. A claimant must establish disability on or before the date last insured in order to be entitled to a period of disability or disability insurance benefits. Loza v. Apfel, 219 F.3d 378, 393 (5th Cir.2000). "Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." Owens v. Heckler, 770 F.2d 1276, 1280 (5th Cir. 1985).

The ALJ noted that progress notes from April/May 2007 indicated that Plaintiff had no major complaints. The medical record cited (Tr. 345), however, related to a follow-up exam for liver problems related to hepatitis. The record of that visit does not include evidence of neck, back, or lifting problems, but it does not seem that was a reason for that particular visit. Thus, it not certain that Plaintiff told his doctor he had no complaints about his neck or back.

Dr. Christopher Snead conducted a hematology/oncology consultation in September 2007. The report focused on hepatitis related problems. It did include a review of systems. With regard to musculoskeletal, "no joint complaints" was recorded. The physical examination found no motor deficits. Tr. 315-17.

The only evidence that Plaintiff points to that is dated before his insured status expired is a February 19, 2009 note that Plaintiff complained of "bad left shoulder/trapezius pain," with weakness in the left arm and hand, and minimal numbness. Tr. 340. The physical exam indicated a limited range of motion in the left shoulder. Tr. 341. The next evidence relevant to this condition is dated April 2, 2009, which was two days after insured status expired. Of course, medical evidence from outside the period may be relevant to the claimant's condition while he was insured. That report, by Dr. David Cavanaugh, states Plaintiff said he noticed pain shoot from his shoulder into his left arm *about six months earlier* while he was working out. The pain progressed and became more frequent over the months, and was accompanied by some numbness, tingling, and weakness. The physical exam found "definite left deltoid and biceps weakness, but there was no triceps weakness, hand muscle strength was full, and there was no atrophy noted. Plaintiff had a fair range of motion of the neck. An MRI from February 2009 showed cervical spondylosis with disk bulging that caused some spinal cord and nerve root compression. Plaintiff reported that he had been using a home traction unit that did not help much. Dr. Cavanaugh discussed some conservative options but thought they were not likely to help. He told Plaintiff that he might wish to consider proceeding straight to surgery. Tr. 177-78.

Dr. David Adams saw Plaintiff a few days later on April 8, 2009, on a referral from Dr. Cavanaugh. Plaintiff gave a six-month history of neck pain radiating into his left shoulder and left upper extremity. Electrodiagnostic findings were consistent with left C5 and C6 radiculopathy. There was no electrodiagnostic evidence of ulnar neuropathy or carpal tunnel syndrome in the left upper extremity. Tr. 165.

Later that month, on April 22, 2009, Plaintiff underwent a three-level anterior cervical diskectomy and fusion. Tr. 231-33. By June 18, 2009, Plaintiff stated that everything was improving, but he still had weakness and numbness in the left arm. Tr. 168. At a visit to Dr. Cavanaugh in October 2009, Plaintiff reported increased pain over the last two months in the left interscapular and trapezius region, which he described as a catch-and-pop type pain with movement. He had no real neck pain, and had otherwise improved in a lot of ways. Tr. 323-24. Plaintiff returned to Dr. Adams for electrodiagnostic testing in October 2009. The findings were similar to those before the surgery, consistent with a left C6 radiculopathy. Tr. 329.

Plaintiff testified at the hearing that he could drive, but not more than an hour or two because of stiffness and pain associated with his surgery. He was taking hydrocodone, Vicodin, Lortab, and other medication. Tr. 32. He said he had been able to help his son open and close his bar from around 2004 until he had neck surgery. He described his duties at the bar as simply making sure the doors were opened and maybe sitting around for awhile, but he did not serve customers or work the cash register. Tr. 49-50. He said the surgery alleviated his problems turning, and a lot of pain associated with his neck, but he still had

problems.  He is able to wash dishes, make the bed, and wash clothes, but he said he could not lift much with his left arm.  Tr. 40-42.

The ALJ discussed Plaintiff's testimony (Tr. 20) but found it was not credible to the extent it was inconsistent with the RFC she assessed. Tr. 21.  She acknowledged that, prior to the date last insured, Plaintiff suffered from degenerative disk disease of the cervical spine with associated radiculopathy.  But she pointed to the lack of evidence of emergency room treatments, therapy, large doses of medication, or other indications of treatment.  She pointed to the 2007 records where Plaintiff stated that he was doing well or did not mention neck problems but, as noted, those issues were not the focus of those visits.  The lack of complaints about the neck problem at those visits is certainly evidence of something, but the context lessens their impact.

The ALJ did not discuss any of the medical evidence that occurred after March 31, 2009, even though the evidence documented a problem that Plaintiff said began when he was working out six months earlier, which was well within the insured period. The subsequent medical evidence was relevant because it related to the severity of the claimant's condition before the expiration of his insured status.  Ivy v. Sullivan, 898 F.2d 1045, 1049 (5th Cir. 1990).

An ALJ is not required to discuss every piece of evidence, but the court is unable to conduct a meaningful review where significant and probative evidence is rejected or overlooked without comment or explanation.  GST v. Commissioner, 2009 WL 3031678 *2 (W.D. La. 2009). Plaintiff has identified what appears to be medical evidence relevant to the

insured period that suggests a reasonable likelihood that Plaintiff was, during his insured time, suffering from a condition that may reasonably have prevented him from performing frequent and constant reaching.  The ALJ did not mention that evidence, so the court is unable to review her assessment of it to determine whether it could withstand review, and it is not appropriate for the court to conduct a de novo review of the case.  In these circumstances, it is appropriate to reverse the Commissioner's decision for lack of substantial evidence and remand to the agency for further proceedings.  On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **reversed** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **remanded** to the Commissioner for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of August, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE